IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JENNY WILSON, on behalf of herself and all others similarly situated, | ) ) ) | |
| *Plaintiffs,* | ) ) ) | |
| v. | ) ) | No. 3:07-0069<br>Judge Nixon |
| GUARDIAN ANGEL NURSING, INC., a Tennessee Corporation; GUARDIAN ANGEL NURSING, INC., a Mississippi Corporation; ON-CALL STAFFING OF TENNESSEE, INC., and ON-CALL STAFFING, INC.; E.L. GARNER, JR.; and E.L. GARNER, III, | ) ) ) ) ) ) ) ) ) | Magistrate Judge Bryant |
| *Defendants.* | ) | |

## ORDER

Pending before the Court is Defendants' Motion for Reconsideration Regarding Order on Plaintiffs' Motion for Miscellaneous Relief and Memorandum and Order, or in the Alternative for Permission for Interlocutory Appeal and to Stay Proceedings ("Defendants' Motion") (Doc. No. 196). Defendants have filed a Memorandum in support of their Motion (Doc. No. 198), Plaintiffs' have filed a Response in Opposition ("Plaintiffs' Response") (Doc. No. 203), and Defendants have filed a further Reply ("Defendants' Reply") (Doc. No. 205).

In addition to the above-referenced pleadings, Plaintiffs filed a Motion to Set Case for Trial (Doc. No. 199) and a Motion to Require Defendants to Comply with the Court's Previous Order (Doc. No. 202). Defendants have filed a Response in Opposition to Plaintiff's Motion to Set Case for Trial (Doc. No. 201), to which Plaintiffs have filed a further Reply (Doc. No. 204).

-1-

For the reasons set out below, Defendants' Motion is **DENIED**, Plaintiffs' Motion to Set Case for Trial is **GRANTED**, and Plaintiffs' Motion to Require Defendants to Comply with the Court's Previous Order is **GRANTED**.

I.  **BACKGROUND**

The factual and procedural histories of this case are well known to both parties. A more complete discussion of these histories may be found in the Court's Memorandum and Order (Doc. No. 189) dated July 31, 2008. For present purposes, the Court highlights the following:

On July 31, 2008 the Court issued a Memorandum and Order ("Summary Judgment Order") that granted partial summary judgment to Plaintiffs on, among other issues, the question of whether Plaintiff licensed practical nurses (LPNs) were "employees" or "independent contractors" within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 - 219. (Doc. No. 189). The Court determined that Plaintiffs were "employees" using the "economic realities" test based on facts common to LPNs who worked for Defendants. (Id. at 19-32). At the time of the Court Summary Judgment Order, 72 LPNs ("Opt-Ins") had signed written consents and filed them with the Court. The Court treated the Opt-Ins as Plaintiffs and extended its summary judgment decision to them as well as the one named Plaintiff, Jenny Wilson.

On September 3, 2008 the Court issued an Order granting Plaintiffs' Motion for Expedited Court-Supervised Notice ("Order Approving Supervised Notice") (Doc. No. 196). The Court found that Plaintiffs had met their burden by proving that other LPNs who had worked for Defendants were "similarly situated" such that a class action was proper, and the Court

approved of sending notice to other LPNs not already party to this action. (Id. at 4-7).

The Court thus formally certified the Plaintiff class *after* granting partial summary judgment to Plaintiffs. This was for two (2) reasons. First, owing to other pressing obligations on the Court's docket, the Court did not turn its full attention to this case until cross-motions for summary judgment had been filed.[1] Second, Defendants' primary argument in opposition to conditional class certification was that, on the merits of the case, all LPNs who had worked for Defendants were independent contractors and not employees. See, e.g., (Doc. No. 31 at 5-9). Ordinarily, an inquiry into the merits of a claim is not relevant to the "similarly situated" determination, see Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 262 (S.D.N.Y. 1997); the "similarly situated" standard requires only a modest factual showing under a fairly lenient standard. Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 547 (6th Cir. 2006). However, because discovery was substantially complete by the time the Court began to address the parties cross-motions on class certification, the Court was in the unique position to address the merits question argued by Defendants in their class certification pleadings. Defendants currently face suit in this Court against a different group of LPNs for similar conduct. The Court was mindful of this, and of the potential for supervised notice to generate further litigation and harm Defendants, in its decision to reach a merits determination prior to class certification.

As a result, the Court addressed the summary judgment motions first and the class certification second. The Court did not foresee prejudice to either party as a result of this sequencing. Moreover, at the time of the Court's Summary Judgment Order, the Court had

---

[1] This Court was engaged with a capital trial which lasted approximately eight (8) months, spanning from September 2007 to May 2008.

-3-

reviewed all discovery and found the "similarly situated" standard met. The Court treated this standard as met in its Summary Judgment Order and made this finding explicit in its later Order Approving Supervised Notice.

Defendants' Motion takes issue with the sequencing – as well as other aspects – of the Court's Orders: Defendant contests the issuance of summary judgment prior to class certification. Defendants raise multiple objections arising out of this sequencing to both the Court's Summary Judgment Order and Order Approving Supervised Notice, and the in the event that the Court does not reverse these opinions, Defendants request permission for interlocutory appeal. Defendants raise objections to the Court's Orders not respective of their sequencing, as well.

Plaintiffs have responded to Defendants' arguments, and in their own right, they seek a date for trial on the remaining issues in this case. Plaintiffs also alert the Court to the fact that Defendants are unwilling to comply with the Court's Order Approving Supervised Notice and refuse to provide the names and contact information for would-be opt-ins pending the Court's decision on Defendants' Motion. Defendants object to the setting of a trial date pending resolution of their Motion, as well.

## II. ANALYSIS

### 1. *Defendants' Motion*

#### A. Defendants' Objections to the Court's Summary Judgment Order

Defendants raise three (3) objections to the Court's Summary Judgment Order (Doc. No. 189). The Court considers each of these arguments in turn.

##### 1. *Whether Judgment for 72 "Putative" Plaintiffs Was Improper*

-4-

The Court's Summary Judgment Order treated as Plaintiffs the 72 LPNs who had "opted-in" to Plaintiff Wilson's suit by filing with the Court signed, written consents to become party plaintiffs prior to the Court's Order. Accordingly, the Court's decision – finding Plaintiffs to be "employees" within the meaning of the FLSA – extended partial summary judgment to the 72 Opt-Ins.

Defendants contend that this was error according to the following syllogism:

(1) FLSA class certification is a two-tiered process, the first tier of which – "conditional certification" – requires a finding that individuals exist who are "similarly situated" to the named plaintiff(s)

(2) an opt-in becomes a party plaintiff only after the first tier is completed and the party is "conditionally certified"

(3) because the Court did not conditionally certify the class until the time of its Order Approving Supervised Notice, which postdates the Order for Summary Judgment, the Opt-Ins were not "Plaintiffs" at the time of the Summary Judgment Order, and so could not properly be granted partial summary judgment on the question of their working relationship to defendants.

(Doc. No. 198 at 2-5).

This argument does not merit reversal of the Court's Summary Judgment Order as to the 72 Opt-Ins for two (2) reasons: (1) partial summary judgment for the Opt-Ins was not legal error, and (2) in any event, Defendants suffered no prejudice.

### a. Judgment for the Opt-Ins Was Not Legal Error

Defendants' syllogism presents an inaccurate view of the law of representative actions under the FLSA. Section 216(b) contains the relevant language detailing FLSA representative actions, stating in pertinent part:

> An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). The statutory language sets out two (2) prerequisites to a representative action: (1) employees seeking to opt-in must file signed consents with the court, and (2) these employees must be "similarly situated" to the named plaintiff(s). See Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 167-68 (1989); Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 546 (6th Cir. 2006). The two-tiered approach to class certification espoused in Defendants' syllogism is a judicially constructed approach to carrying out the § 216(b) requirements. See, e.g., Comer, 454 F.3d at 546-47; Cameron-Grant v. Maxim Healthcare Servs., Inc., 347 F.3d 1240, 1243 n.2 (11th Cir. 2003). However, while the two-tiered approach has been broadly endorsed and undoubtedly promotes efficiency and predictability in the litigation of FLSA collective actions, this Court is not aware of any authority requiring its use, and indeed, there is some authority to the contrary. See Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001) ("[t]he two-tiered approach to certification of § 216(b) opt-in classes . . . appears to be an effective tool for district courts to use . . . . Nothing in our circuit precedent, however, requires district courts to utilize this approach."); Reed v. Mobile County School Sys., 246 F. Supp. 2d 1227, 1230 (S.D. Ala. 2003). Insofar as Defendants argue that the two-tiered approach is required, they are mistaken.

In the present case, the Court did not strictly adhere to the two-tiered approach; the Court conditionally certified a class and authorized notice to other prospective plaintiffs as a formal

matter after the issuance of partial summary judgment for Plaintiffs, when discovery was substantially complete. Comer, 454 F.3d at 546 (stating that first tier conditional certification occurs at beginning of discovery). This does not constitute legal error because strict adherence to the two-tiered approach is not required. The only constraints upon the Court in its ability to treat the 72 Opt-Ins as party plaintiffs are those set out in § 216(b). The Opt-Ins must have filed signed, written consents with the Court, and they must have been "similarly situated" to the named Plaintiff, Jenny Wilson. All 72 Opt-Ins filed signed, written consents to become party plaintiffs with the Court. The question is thus whether the Court found the Opt-Ins to be "similarly situated."

The "similarly situated" standard is not precisely defined, but generally, courts consider the standard satisfied upon a showing of common facts among the would-be plaintiffs' claims, or of facts tending to show a common policy in violation of the law. See, e.g., Roebuck v. Hudson Valley Farms, Inc., 239 F. Supp. 2d 234, 238 (N.D.N.Y. 2002); White v. Osmose, Inc., 204 F. Supp. 2d 1309, 1313-14 (M.D. Ala. 2002); Wynne v. Nat'l Broad. Co., 234 F. Supp. 2d 1067, 1081 (C.D. Cal. 2002); Sperling v. Hoffman-LaRoche, Inc., 118 F.R.D. 392, 407 (D.N.J. 1988), *aff'd in part on other grounds and appeal dismissed in part on other grounds*, 862 F.2d 439 (3d. Cir. 1988), *aff'd and remanded on other grounds*, 493 U.S. 165 (1989); 7B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1807 (3d ed. 2008).

In the Summary Judgment Order in this case, the Court found that Defendants did not pay overtime to any LPN. (Doc. No. 189 at 9). The Court also found that Defendants treated all LPNs working for Defendants similarly. In the subsections of the Court's Summary Judgment

Order labeled "Plaintiffs" and "The Working Relationship Between Plaintiffs and Defendants" within the "Factual Background" section, the Court clearly recognized that LPNs who had worked for Defendants were near-identical in terms of their level of training, the degree of control that Defendants exercised over them, their compensation, their opportunity for profit or loss, and so forth. In short, the Court found that the 72 Opt-Ins had far exceeded the "similarly situated" threshold and were properly made party plaintiffs to this action.

As a result, Defendants' argument that partial summary judgment as to the Opt-Ins was improper, fails. There is no authority to suggest that this Court was required to use the words "similarly situated" in or before its Summary Judgment Order. Because the Court clearly treated the Opt-Ins as "similarly situated," the 72 Opt-Ins were proper Party Plaintiffs subject to the Court's Summary Judgment Order.

### b. Defendants Have Suffered No Prejudice

Secondly, Defendants' argument as to the propriety of partial summary judgment in favor of the 72 Opt-Ins must fail because, even assuming that the Court's failure to announce a finding that the Opt-Ins were "similarly situated" was legal error, the Defendants suffered no prejudice as a result.

The absence of any prejudice to Defendants is clear upon review of two (2) considerations. First, Defendants retain the option of filing a motion to decertify the class, as is customary under the second tier of FLSA class certification. See, e.g., Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1099 (10th Cir. 2001) (discussing district court opinion that decertified class upon defendant's motion); Hipp, 252 F.3d at 1219; Reeves v. Alliant Techsystems, Inc., 77 F. Supp. 2d 242, 247 (D.R.I. 1999). Defendants are not barred from

contesting the propriety of a representative action on some new grounds if any exist. The Court will consider any such pleadings, particularly if Defendants have withheld any arguments to date in reliance on the Court's adherence to the two-tiered approach.

Second, Defendants cannot argue any prejudice resulting from the sequencing of the Court's opinions given that a second action is pending against Defendants in this Court for the same conduct. If the Court's Summary Judgment Order were understood to procedurally bar the Opt-Ins from participation in this litigation, there would be no such bar against their filing consents to join that action, in which no ruling has been issued on the merits. For these reasons, the Court finds no prejudice to Defendants resulting from the issuance of summary judgment to the 72 Opt-Ins, and for this reason as well, the Court's Summary Judgment Order as to the 72 Opt-Ins is upheld.

### 2. *Whether "Individualized Analysis" Was Required*

Defendants argue that the Court was required to perform an "individualized analysis" of Plaintiff Jenny Wilson – and any other Plaintiff properly party to the action[2] – in reaching a conclusion as to whether she is an "employee" or an "independent contractor" within the meaning of the FLSA. (Doc. No. 198 at 4). "Individualized analysis," according to Defendants, means that "the Court should have limited its analysis to the facts regarding Jenny Wilson's relationship with On-Call – i.e. the work <u>she</u> performed, and <u>her</u> economic realities." (<u>Id.</u>) (emphasis in original). Defendants deny that this Court was permitted to consider facts common to all LPNs in Defendants' employ. In support of this argument, Defendants cite two (2) cases:

---

[2] Because Defendants deny that the 72 Opt-Ins were Plaintiffs at the time of the Court's Summary Judgment Order, Defendants allege that the Court's determination of employment status should have been relative to facts specific to Ms. Wilson alone.

(1) Donovan v. Brandel, 736 F.2d 1114 (6th Cir. 1984), and (2) Phaahler v. Consultants, Architects, Inc., 2000 WL 198888 (N.D. Ill. 2000). Defendants' reliance on Brandel and Phaahler is misplaced.

Brandel is a case in which the Sixth Circuit upheld the lower court's opinion that Defendant Brandel's pickle harvesters were not "employees" under the FLSA. 736 F.2d at 1120. Both the district court and the Sixth Circuit based their findings on facts common to all of Defendant Brandel's pickle harvesters. Id. at 1116-20. Defendants argue in their Reply that Brandel is distinguishable from this case because that action was brought by the Department of Labor and represented legal analysis at a point when discovery was extensive regarding the specific workers in question. (Doc. No. 205 at 5-6). But discovery was extensive in the present case at the point of summary judgment, and the facts suggested no relevant differences across the group of Plaintiff LPNs. Even if Brandel were distinguishable, it does not stand for the proposition alleged by Defendants, that the question whether "employee" or "independent contractor" must be made on an individual basis by reference only to facts particular to each worker.

Pfaahler is a decision that denied conditional certification in Plaintiff Pfaahler's FLSA suit against Defendant Consultants for Architects ("CFA"). 2000 WL 198888, at *1-3. In Pfaahler, the district court found that "Pfaahler makes no showing that the other potential claimants performed the same type of duties as himself," id. at *2, and in fact, the court determined that there was considerable variance in the experience, skill, duties performed, and working relationship with CFA across the would-be plaintiffs whom CFA referred. Id. at *1. It was this set of facts that prompted the court to reject a finding that Plaintiff Pfaahler and others

-10-

were "similarly situated" and, accordingly, to write of the merits of that case, that "to determine who is an independent contractor and who is an employee, the court would be required to make a fact-intensive, individual determination as to the nature of each potential claimant's relationship with CFA." Id. at *2. Pfaahler is not on point. This Court found no significant variance across Plaintiff LPNs with regard to the facts pertinent to the "economic realities" inquiry. Instead, all of the facts suggested that Plaintiff LPNs were almost indistinguishable in terms of their working relationships with Defendants.

More generally, though, Pfaahler, like Brandel, does not stand for the proposition that in every case, the determination of employee or independent contractor status must be made on an individual basis by reference to facts particular to each individual plaintiff. Such an unnecessarily laborious rule would frustrate the purpose of § 216(b) by making FLSA collective actions massively inefficient, cumbersome, and perhaps unworkable in practice. Moreover, as Plaintiffs point out in their Response,

> It is well settled that where the plaintiffs in an FLSA collective action are similarly situated, liability as to the entire class may be established by representative proof that may include testimony of a small number of plaintiffs and/or documentary evidence establishing factual circumstances generally applicable to the entire class of plaintiffs.

(Doc. No. 203 at 5-6) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946); Reich v. Gateway Press, 13 F.3d 685 (3d Cir. 1994); Dole v. Snell, 875 F.2d 802 (10th Cir. 1989); Donovan v. Bel-Loc Diner, 780 F.2d 1113 (4th Cir. 1985); Donovan v. New Floridian Hotel, 676 F.2d 468 (11th Cir. 1982); Cowan v. Treetop Enterprises, 120 F. Supp. 2d 672 (M.D. Tenn. 1999); McLaughlin v. DialAmerica Marketing, Inc., 716 F. Supp. 812 (D.N.J. 1989)).

Defendants might have argued that it was improper for the Court to consider general facts common to all of Defendant's LPNs and not just Plaintiff Wilson because the Court did not expressly make a finding that all LPNs were "similarly situated" prior to the Court's Summary Judgment Order. However, for the reasons stated above, this argument is unpersuasive: the Court's finding within its Summary Judgment Order made clear that Plaintiffs had surpassed the low threshold of "similarly situated," and therefore it was proper for the Court to find that all Plaintiffs are "employees" upon consideration of representative facts common to all LPNs.

### 3. Whether the Independent Contractor Agreement Was Given Sufficient Weight

Defendants argue that the Court's Summary Judgment Order was in error because the Court did not consider the Independent Contractor Agreement ("ICA") in determining that Plaintiffs were employees under the FLSA. This argument is without merit. The Court addressed the ICA and noted its impact on the Plaintiffs' employment status under relevant case law. (Doc. No. 189 at 20-1). Furthermore, the Court's determination that Plaintiffs are employees was based on detailed analysis of significant facts under the governing standard "economic realities" test. (Id. at 22-34).

### B. Defendants' Objections to the Court's Order Approving Supervised Notice

Defendants urge this Court to reconsider its Order Approving Supervised Notice on two (2) grounds: (1) collective action is improper in this case because of the highly specific factual inquiry that would be required to determine whether LPNs were employees or independent contractors, and (2) prejudice would result to Defendants if additional LPNs were permitted to join this action after the Court has already determined that LPNs in Defendants' employ were

-12-

employees and so due overtime compensation. The Court considers these arguments in turn.

        1.    *Whether This Is Not a Proper Case for Collective Action*

Defendants cite numerous cases for the proposition that a collective action is improper "where courts are to make fact-intensive, individual determinations as to the nature of each potential claimant's relationship as an independent contractor or employee under the FLSA." (Doc. No. 198 at 5).[3] The Court does not take issue with this proposition. However, the Court rejects Defendants' contention that this proposition has any bearing on the present case. In both the Court's Summary Judgment Order and Order Approving Supervised Notice, the Court found that fact-intensive, individual determinations for each of Defendants' LPNs were not necessary to determine Defendants' liability. The factual information before the Court suggests that LPNs who worked for Defendants were nearly identical with regard to those facts pertinent to determination of the working relationship between LPNs and Defendants. As previously noted, Defendants maintain the option of filing a motion to decertify the Plaintiff class. However, at present, the Court sees no reason to reverse its decision that this case presents a proper opportunity for collective action.

        2.    *Whether Defendants Will Suffer Prejudice*

Defendants argue in the alternative that it is unfair to permit prospective litigants to join the Plaintiff class at this stage when the Court has already determined that LPNs who have worked for Defendants are employees subject to FLSA protections. Defendants rely on Eisen v.

---

[3] It is worth noting that Defendants argue that this type of "individualized analysis" is necessary for all Plaintiffs in all FLSA cases. If, as Defendants maintain, "individualized analysis" of this type is both required for a merits determination in every case and forecloses collective actions, then FLSA collective actions are never permitted. This conclusion is clearly false, suggesting a flaw in one or both of Defendants' underlying premises.

-13-

Case 3:07-cv-00069 Document 209 Filed 11/12/08 Page 13 of 18 PageID #: 1801

Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974), to argue that it is unfair to a defendant for a district court to determine the merits of a claim prior to class certification. In Eisen, the Supreme Court found error in a district court's decision to hold a preliminary merits hearing in order to determine the appropriateness of a Rule 23 class action. 417 U.S. at 177-78. While the Eisen Court did take issue with the sequencing of a merits determination prior to class certification, Eisen discussed prejudice to the defendant with regard to the merits hearing itself. Id. Specifically, the Supreme Court held that the district court's action in conducting a merits hearing may have prejudiced the defendant "since of necessity it . . . [was] not accompanied by the traditional rules and procedures applicable to civil trials." Id. at 178. The present case does not present an issue of a merits determination unprotected by traditional rules or procedural safeguards. Eisen is thus not instructive with regard to the possibility of prejudice to Defendants resulting from the Court's sequencing of opinions in this case.

Raper v. Iowa, 165 F.R.D. 89 (S.D. Iowa 1996) and Roberts v. Western Airlines, 425 F. Supp. 416 (N.D. Cal. 1976) are more on point. In those cases, the respective district courts took up the question of whether to permit additional plaintiffs to opt-in to an FLSA suit after the court had made a determination on the merits. Raper, 165 F.R.D. at 91; Roberts, 425 F. Supp. at 419. In Roberts, the district court refused to permit opt-ins to join suit after a merits determination, holding that "[s]uch a practice would allow employees to be bound when a judgment is advantageous and to be free when it is unfavorable." Roberts, 425 F. Supp. at 419. The Raper Court reached the opposite conclusion, citing the Eight Circuit reasoning that opt-ins under the FLSA should be "given the maximum latitude consistent with fairness to the defendant, so long as there was no express congressional direction to the contrary." Raper, 165 F.R.D. at 91

-14-

(quoting Kelly v. Alamo, 964 F.2d 747, 751 (8th Cir. 1992)). In Raper, the district court found the Roberts concern for wait-and-see plaintiffs inapplicable and permitted opt-ins to join suit post-merits determination for five (5) reasons:

   (1)    liability was determined upon consideration of legal issues derived from undisputed facts such that an unfavorable outcome would have consequences for any putative plaintiffs who strategically remained on the sidelines

   (2)    there remained the risk of appeal and reversal at the appellate level

   (3)    damages had not yet been proven

   (4)    Defendants faced limited additional exposure

   (5)    judicial economy and the convenience of the parties weighed in favor of recognizing the opt-ins as party plaintiffs.

Id. at 92.

Raper is a well-reasoned decision, and the Court finds that the same five (5) reasons suggest no prejudice to Defendants in the present case. First, liability was determined in this case on the basis of undisputed facts. Any significant disagreement between the parties was respective of the legal implications of these facts. As a result, a ruling in favor of Defendants would have had negative practical consequences to any wait-and-see plaintiffs. Second, Defendants have the opportunity both to seek reversal on appeal of the Court's Summary Judgment Order, and additionally, as noted above, to file a motion to decertify the class. Third, damages in this case have not yet been proven. Fourth, while Defendants in this case might seem to face much greater exposure than the Defendants in Raper – Raper allowed seven (7) opt-ins, while there are hundreds of LPNs who have worked for Defendants not presently party to litigation against Defendants –, because of the second case pending against Defendants in this

-15-

Court, Defendants may have faced this exposure anyway. Thus, that the Court's sequencing of opinions likely created no additional exposure. Fifth, judicial economy and the convenience of the parties would counsel permitting opt-ins to join this suit, rather than forcing would-be opt-ins to find other counsel or perhaps encouraging a third litigation against Defendants.

The Court finds support for its determination of no prejudice in the Sixth Circuit case Alexander v. Aero Lodge No. 735, International Association of Machinists & Aerospace Worker, AFL-CIO, 565 F.2d 1364 (6th Cir. 1977). In that case, the Sixth Circuit discussed the propriety of a district court's class certification following a merits-based decision in the Rule 23 context. The Circuit Court held that the sequencing of the decisions was permissible because the action had always been maintained as a representative action and was treated as such by the district court in its decision on the merits. Alexander, 565 F.2d at 1372. The Court finds the same circumstances present here. Plaintiffs have prosecuted this action as a representative one from their earliest pleadings and the Court's Summary Judgment Order treated the case as a class action.

For these reasons, the Court finds that no prejudice will result to Defendants from permitting opt-ins to join this suit after the Court's Summary Judgment Order, and for this reason as well, the Court declines to reconsider its Order Approving Supervised Notice.

### C. Defendants Seek Permission for Interlocutory Appeal

In the alternative to reversal on the Court's earlier orders, Defendants seek interlocutory appeal under 28 U.S.C. § 1292(b). Interlocutory appeal is permissible where two (2) conditions hold: (1) a district court's order involves a controlling question of law as to which there is substantial ground for difference of opinion, and (2) an immediate appeal from the order may

significantly advance the termination of the litigation. 28 U.S.C. § 1292(b).

Defendants request permission for interlocutory appeal on the question of whether the Court erred by failing to conduct an "individualized inquiry into the issue of the Plaintiff's status as an employee under the FLSA and . . . [by finding] the case appropriate for collective certification without an individualized inquiry." (Doc. No. 198 at 10). The Court determined that Plaintiffs are employees under the "economic realities" test on the basis of relevant facts common to all LPNs who worked for Defendants. As discussed above, Defendants have cited no authority to contradict this method of analysis and there is ample authority to support the Court's method. Furthermore, the Court determined that class certification and supervised notice were proper under the "similarly situated" test. Defendants have cited no authority to contradict the propriety of this test or the Court's finding and there is ample authority in support of the Court's finding. There is thus no ground for difference of opinion with the Court's findings, and Defendants request for permission to seek interlocutory appeal is **DENIED**.

2. *Plaintiffs' Motion to Set Case for Trial*

Plaintiffs' have requested a trial date. Defendants' object to this request on two (2) grounds: trial should not be set until (1) resolution of Defendants' Motion, and (2) final determination of the propriety of a collective action. This Order answers Defendants' first objection. In response to Defendants' second objection, the Court considers it proper that an end-date be scheduled for the allowance of opt-ins and that Defendants be given a reasonable amount of time after the opt-in period to file a motion to decertify the class. However, the Court sees no reason why a trial date cannot be set at this juncture if such allotments of time are provided. Accordingly, the Court holds that **Friday, November 21, 2008** is the last day on

-17-

which a prospective plaintiff will be permitted to opt-in to this litigation in compliance with § 216(b). Defendants then have until **Monday, December 22, 2008** to file a motion to decertify the class. Trial on all remaining issues is **SCHEDULED** for **Tuesday, January 6, 2009 at 9:00 a.m.**

3.  *Plaintiffs' Motion to Require Defendants to Comply*

Defendants are **ORDERED** to comply with the Court's Order Approving Supervised Notice of August 18, 2008 (Doc. No. 196). Any argument for non-compliance that Defendants may have had respective of the pendency of Defendants' Motion is now moot.

III. **CONCLUSION**

For the above-stated reasons, Defendants Motion is **DENIED** and the Court's Summary Judgment Order and Order Approving Supervised Notice are **UPHELD**. Plaintiffs' Motion to Set Case for Trial is **GRANTED**. **Friday, November 21, 2008** is the last day on which a prospective plaintiff will be permitted to opt-in to this litigation, Defendants have until **Monday, December 22, 2008** to contest a collective action, and trial on all remaining issues is **SCHEDULED** for **Tuesday, January 6, 2009 at 9:00 a.m.** Finally, Plaintiffs' Motion to Require Defendants to Comply with the Court's Order Approving Supervised Notice is **GRANTED**.

It is so ORDERED.

Entered this ___6th___ day of __November__ 2008.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT