IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **JENNY WILSON, on behalf of**<br>**herself and all others similarly situated,** | ) | |
| | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| **v.** | ) | **No. 3:07-0069** |
| | ) | **Judge Nixon** |
| | ) | **Magistrate Judge Bryant** |
| **GUARDIAN ANGEL NURSING, INC.,** | ) | |
| **a Tennessee Corporation; GUARDIAN** | ) | |
| **ANGEL NURSING, INC., a Mississippi** | ) | |
| **Corporation; ON-CALL STAFFING** | ) | |
| **OF TENNESSEE, INC., and ON-CALL** | ) | |
| **STAFFING, INC.; E.L. GARNER, JR.;** | ) | |
| **and E.L. GARNER, III,** | ) | |
| | ) | |
| *Defendants*. | ) | |

## ORDER

Pending before the Court are six (6) Motions filed by Defendants:

    (1)    Motion to Extend Deadline for Filing a Motion to Decertify, Extension of Discovery, and to Compel Discovery of Opt-Ins ("Defendants' Discovery Motion") (Doc. No. 384);

    (2)    Motion to Ascertain Status of Defendants' Motion to Extend Deadline for Filing a Motion to Decertify, Extension of Discovery, and to Compel Discovery of Opt-Ins ("Defendants' Motion to Ascertain Status") (Doc. No. 494);

    (3)    Motion to Decertify Collective Action ("Defendants' Motion to Decertify") (Doc. No. 497);

    (4)    Motion to Disqualify and/or for Partial Summary Judgment as to Certain Individual Opt-Ins ("Defendants' Motion to Disqualify") (Doc. No. 499);

    (5)    Motion for Continuance of Trial Date ("Defendants' Motion for Continuance") (Doc. No. 502); and

-1-

(6)     Motion to Supplement Motion to Continue ("Defendants' Motion to Supplement") (Doc. No. 518).

Plaintiffs have filed four (4) Responses in opposition:

(1)     Response to Defendants' Discovery Motion (Doc. No. 486);

(2)     Response to Defendants' Motion to Decertify (Doc. No. 501);

(3)     Response to Defendants' Motion to Disqualify (Doc. No. 503); and

(4)     Response to Defendants' Motion to Continue (Doc. No. 513).

Defendants have filed three (3) Replies:

(1)     Reply to Plaintiffs' Response to Defendants' Discovery Motion (Doc. No. 493);

(2)     Reply to Plaintiffs' Response to Defendants' Motion to Disqualify (Doc. No. 517); and

(3)     Reply to Plaintiffs' Response to Defendants' Motion to Continue (Doc. No. 516).

By Order dated March 9, 2009, the Court continued trial in this matter pending resolution of the above-listed pleadings. (Doc. No. 520). As a result, Defendants' Motions for Continuance (Doc. No. 502) and to Supplement (Doc. No. 518) are **MOOT**.

For the reasons discussed below, the Court resolves the remaining issues as follows: Defendants' Motion to Ascertain Status is **GRANTED** and Defendants' Discovery Motion is **DENIED**. Defendants' Motion to Decertify is **DENIED** and Defendants' Motion to Disqualify is **GRANTED in part, DENIED in part, and STAYED in part**.

## I.     BACKGROUND

This is an action for recovery of overtime backpay, liquidated damages, and attorneys'

-2-

fees under the Fair Labor Standards Act ("FLSA"). 29 U.S.C. §§ 207, 216(b).

Joanie Christie initiated this action by filing a Complaint (Doc. No. 1) against Defendant Guardian Angel Nursing, Inc., a Tennessee Corporation, on January 18, 2007.[1] Plaintiff Jenny Wilson opted-in to this litigation on February 23, 2007 and filed an Amended Complaint (Doc. No. 4), adding Guardian Angel Nursing, a Mississippi corporation, On-Call Staffing of Tennessee, Inc., and On-Call Staffing as Defendants. Plaintiff Wilson filed a Second Amended Complaint (Doc. No. 73) on August 2, 2007, adding as Defendants Leawood, Inc., Friendship Home Health, LLC, E.L. Garner, Jr., and E.L. Garner, III. Joanie Christie was voluntarily dismissed from this suit on March 7, 2007. (Doc. No. 76). Friendship Home Health, LLC was voluntarily dismissed without prejudice on September 13, 2007. (Doc. No. 92). The Court dismissed Leawood, Inc. without prejudice per joint stipulation of the parties on August 18, 2008. (Doc. No. 192).

Defendants are a single business entity that places trained nurses in private homes and medical facilities on an as-needed basis. Plaintiff Wilson was at one time a licensed practical nurse ("LPN") who performed in-home, or "private duty," continuous care nursing under contract with Defendants. Shortly after the filing of this suit, other LPNs who had worked for Defendants filed began opting-in to this litigation by filing signed consents under 29 U.S.C. § 216(b) (hereinafter, "Opt-Ins").

Plaintiff Wilson filed a Motion for Expedited Court-Supervised Notice (Doc. No. 19) on April 25, 2007. This Motion sought the Court's preliminary decision that collective action was

---

[1] Unless otherwise noted, facts in this Section are taken from the Court's Summary Judgment Order (Doc. No. 189).

-3-

proper, as well as an associated order approving notice to those "similarly situated" to Plaintiff

Wilson. Defendants opposed supervised notice on the grounds that all LPNs in Defendants'

employ were independent contractors, making them ineligible for overtime pay under the FLSA.

(Doc. No. 31). Defendants also argued that a collective action was improper because certain

FLSA exemptions would apply to particular LPNs.

On June 13, 2007, Plaintiff Wilson filed a Motion to Approve Notice to Prospective Class

Members (Doc. No. 38). This Motion urged the Court to grant Plaintiff Wilson's earlier Motion

for Expedited Court-Supervised Notice (Doc. No. 19). Defendants filed a Response in

Opposition (Doc. No. 56) for the same reasons as stated in Defendants' Response (Doc. No. 31)

to Plaintiff Wilson's earlier Motion (Doc. No. 19).

On September 6, 2007, discovery closed pursuant to Magistrate Judge Bryant's Initial

Case Management Order (Doc. No. 12). By that time, approximately 30 Opt-Ins had become

party Plaintiffs pursuant to § 216(b). In the course of discovery, Defendants deposed only

representative Plaintiff Jenny Wilson.

The parties filed cross summary judgment motions on November 16, 2007. (Doc. Nos.

130, 133). Both parties filed a statement of undisputed facts (Doc. Nos. 131, 134). Plaintiffs'

Statement of Material Facts as to Which There Is No Genuine Issue for Trial Filed in Support of

Plaintiffs' Motion for Partial Summary Judgment ("Plaintiffs' Statement of Facts") (Doc. No.

134) contained 221 paragraphs and outlined in significant detail facts common to all LPNs in

Defendants' employ. These facts included LPNs' level of training, method and rate of

compensation, investment in Defendants' business, length and frequency of shifts, oversight by

Defendants' personnel, communications with Defendants, job duties, and company performance

-4-

requirements, among other facts. Defendants' Response to Plaintiffs' Statement of Facts (Doc. No. 159) did not dispute Plaintiffs' version of the facts in any significant respect. The facts before the Court at the summary judgment stage were thus largely undisputed – the central dispute between the parties being whether these facts supported a classification of Defendants' LPNs as "employees" or "independent contractors."

On July 31, 2008, the Court issued a Memorandum and Order ("Summary Judgment Order") (Doc. No. 189), finding that Plaintiff LPNs were employees within the meaning of the FLSA. The Summary Judgment Order also found that Defendants' conduct was not in good faith, such that liquidated damages were mandated, and that Defendants' conduct was willfull, making a three-year statute of limitations proper. (Id.). The Court found that a genuine issue of material fact remained as to whether or not Defendant E.L. Garner, III was an "employer" within the meaning of the FLSA, precluding summary judgment on that question. (Id.).

On September 3, 2008, the Court approved supervised notice to prospective plaintiff LPNs who had previously worked for Defendants and been denied overtime compensation (Doc. No. 196). The Court's Order Approving Supervised Notice found that there were likely several hundred LPNs similarly situated to Plaintiffs. (Doc. No. 196). The Court rejected Defendants' arguments against supervised notice that (1) Plaintiffs were independent contractors, and (2) certain LPNs fell within FLSA exemptions, making a single collective action unmanageable. (Id.). Specifically, the Court found that none of the FLSA exemptions cited by Defendants applied to any LPN, and that Defendants' independent contractor argument was moot in light of the Court's Summary Judgment Order. (Id.).

Defendants initially refused to comply with the Court's Order Approving Supervised

-5-

Notice and filed a Motion for Reconsideration and/or in the Alternative for Permission for Interlocutory Appeal and to Stay Proceedings (Doc. No. 197) on September 12, 2008. Defendants argued that: (1) the Court's Summary Judgment Order was wrong on the merits, (2) the Court's Order Approving Supervised Notice was wrong on the merits, and (3) the Court's sequencing of these Orders – granting Plaintiffs partial summary judgment before granting supervised notice – was improper. Defendants asked the Court to reconsider both Orders, or in the alternative, for permission for interlocutory appeal.

The Court denied Defendants' request for reconsideration or interlocutory appeal by Order dated November 12, 2008 ("Order Denying Reconsideration") (Doc. No. 209). The Court found that both its Summary Judgment Order and its Order Approving Supervised Notice correctly applied the proper legal standards. As for Defendants' arguments concerning the sequencing of the Court's Orders, the Court noted that this sequencing was unconventional. Nonetheless, the Court found that this sequencing was not contrary to law, and that Defendants had suffered no prejudice, in part because Defendants retained the option of filing a Motion to Decertify.

The Court's Order Denying Reconsideration ordered Defendants' to comply with the Court's Order Approving Supervised Notice and established a schedule for the addition of Opt-Ins, Defendants' filing of a Motion to Decertify, and trial. However, the dates listed in the Court's Order Denying Reconsideration contained errors; on November 21, 2008, the Court corrected its earlier Order and stated that December 12, 2008 was the last date for the addition of Opt-Ins, January 9, 2009 was the last date on which Defendants would be permitted to contest collective action, and that trial would begin on March 17, 2009. (Doc. No. 363).

-6-

On November 26, 2008, Defendants filed their Discovery Motion (Doc. No. 384).

On December 12, 2008, the Plaintiff class closed at 297 party Plaintiffs.

Defendants filed their Motion to Ascertain Status (Doc. No. 494) on January 8, 2009. Having received no resolution of that Motion from the Court, Defendants filed their Motion to Decertify (Doc. No. 497) the following day, January 9, 2009. Defendants' Motion to Decertify alerted the Court to the fact that a number of Opt-Ins have filed for bankruptcy without listing their claims against Defendants among their assets in bankruptcy court. Plaintiffs do not dispute this fact. On January 16, 2009, Defendants filed their Motion to Disqualify (Doc. No. 499), arguing that all such Opt-Ins must be dismissed from this suit under the doctrine of equitable estoppel.

## II.    ANALYSIS

### 1.    Defendants' Discovery Motion

Defendants' Discovery Motion argues that discovery must reopened as to the Opt-Ins so that Defendants may perfect their Motion to Decertify. Defendants argument proceeds on the basis of three (3) premises: (1) Defendants were denied the opportunity for discovery regarding the Opt-Ins through no fault of Defendants; (2) Defendants must be permitted such discovery to perfect their Motion to Decertify; and (3) Defendants are entitled to perfect their Motion to Decertify because the Court's Order Denying Reconsideration so held. As discussed below, the Court is in agreement as to the first premise but rejects the second. Accordingly, the Court does not consider the third premise, and **DENIES** Defendants' Discovery Motion.

### A.    *Defendants Were Denied Discovery as to the Majority of the Opt-Ins*

-7-

With respect to the first premise, the Court concurs with Defendants. It was reasonable for Defendants to assume that the Court would address the propriety of collective action before ruling on the merits of the underlying claim. Ordinarily, district courts make a decision on the propriety of an FLSA collective action in two (2) stages, making (1) a conditional certification determination at the start of discovery, and then (2) a final determination when "all the opt-in forms have been received and discovery has concluded." Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 546 (6th Cir. 2006) (quoting Goldman v. RadioShack Corp., 2003 WL 21250571, at *6 (E.D. Pa. April 17, 2003)). Typically, it is after determining whether the case should proceed as a representative action that a district court will address the merits of a case, whether on summary judgment or at trial. See Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1102-3 (discussing the decision whether to permit a class action in terms concerning the propriety of a collective merits determination).

In reliance on this formula for resolution of FLSA disputes, Defendants may reasonably have expected that if this Court was going to approve supervised notice and conditionally certify a class, the Court would do so near the start of discovery. Defendants would then have taken discovery as to Opt-Ins in preparation for a motion to decertify the class. But the Court issued its Order Approving Supervised Notice on September 3, 2008, almost one year to the day after discovery closed on September 6, 2007. Only 31 individuals had opted-in to this litigation as of the date discovery closed -- the remaining 266 Opt-Ins were not parties to this litigation during discovery. As a result, Defendants had no reasonable opportunity to conduct discovery with regard to the majority of the Plaintiff class.

B.     *Defendants Are Not Entitled to Discovery Regarding All Opt-Ins*

-8-

The Court disagrees with Defendants, however, that they must be permitted discovery as to the Opt-Ins to perfect their Motion to Decertify.

A defendant's motion to decertify generally triggers a district court's final assessment as to the propriety of a collective action. Comer, 454 F.3d at 546. This determination turns on whether or not the opt-in plaintiffs are "similarly situated" for purposes of § 216(b). Id.; Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1259-60 (11th Cir. 2008); Thiessen, 267 F.3d at 1102. As many courts have noted, "similarly situated" has not been strictly defined by either Congress or the federal judiciary. See, e.g., Morgan, 551 F.3d at 1259-60; Thiessen, 267 F.3d at 1105; Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213-16 (5th Cir. 1995). However, in considering whether opt-in plaintiffs are sufficiently similar to survive a motion to decertify, district courts commonly consider the following factors:

> (1) the disparate factual and employment setting of the individual plaintiffs, such as a) job duties; b) geographic location; c) supervision; and d) salary; (2) the various defenses available to the defendant that appear to be individual to each plaintiff; and (3) fairness and procedural considerations.

Wilks v. Pep Boys, 2006 WL 2821700, at *3 (M.D. Tenn. Sept. 26, 2006); accord Morgan, 551 F.3d at 1261; Thiessen, 267 F.3d at 1103. Additionally, district courts must also consider the twin purposes of § 216(b): "(1) reducing the burden on plaintiffs through the pooling of resources, and (2) efficiently resolving common issues of law and fact that arise from the same illegal conduct." Morgan, 551 F.3d at 1264 (citing Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 170 (1989)).

These factors are tools for courts to use in resolving the following question: is this case one in which a collective merits-determination would be appropriate? Id., at 1261 ("as more

-9-

*legally* significant differences appear amongst the opt-ins, the less likely it is that the group of employees is similarly situated" (emphasis added)). Or, perhaps more pragmatically, the relevant question is: is this a case in which the legally significant facts across plaintiffs are sufficiently similar as to permit fair adjudication as to all plaintiffs on the basis of the representative evidence of a few? See Reich v. Gateway Press, 13 F.3d 685, 701 (3rd. Cir. 1994) (finding that in FLSA class actions, "Courts commonly allow representative employees to prove violations with respect to all employees"); see also, Donovan v. Bel-Loc Diner, 780 F.2d 1113, 1116 (4th Cir. 1985) (acknowledging widespread practices of trying FLSA class actions through use of "representative testimony"). This understanding is intuitive and helps explain why district courts typically make determinations regarding the propriety of a class action prior to addressing the underlying merits.

In this case, the Court reached the merits decision that LPNs in Defendants' employ were "employees" within the meaning of the FLSA prior to approving supervised notice. This determination was based on the facts before the Court at the time of summary judgment – Plaintiffs filed a Statement of Facts containing 221 factual allegations, all but eight (8) of which were conceded by Defendants. The undisputed facts allowed the Court to find in its Summary Judgment Order,

> that Defendants did not pay overtime to any LPN. The Court also found that Defendants treated all LPNs working for Defendants similarly. In the subsections of the Court's Summary Judgment Order labeled "Plaintiffs" and "The Working Relationship Between Plaintiffs and Defendants" within the "Factual Background" section, the Court clearly recognized that LPNs who had worked for Defendants were near-identical in terms of their level of training, the degree of control that Defendants exercised over them, their compensation, their opportunity for profit or loss, and so forth. In short, the Court found that the 72 Opt-Ins had far exceeded the "similarly situated" threshold and were properly

-10-

made party plaintiffs to this action.

(Doc. No. 209 at 7-8). Defendants thus admitted in their Response to Plaintiffs' Statement of

Facts that Defendants' LPNs were nearly identical under the factors of the "economic realities"

test used to determine whether a worker is an "employee" or an "independent contractor." See

Imars v. Contractors Mfg. Servs., Inc., 1998 WL 598778, at *3 (6th Cir. 1998) (defining factors

and purpose of "economic realities" test). As a result, finding that there was "no significant

variance across Plaintiff LPNs with regard to the facts pertinent to the 'economic realities'

inquiry," (Doc. No. 209), the Court was able to reach a decision on the merits with respect to all

LPNs in Defendants' employ.

     The question underlying a district court's analysis of a Motion to Decertify – as discussed

above, 'is this case right for representative proof and collective merits decision?' – is thus largely

moot. On the basis of the ample discovery at the time of summary judgment, the Court made a

merits decision on the basis of representative proof.

     Examination under the conventional motion to decertify factors only amplifies that

further discovery is unnecessary at this time. With regard to the first factor – the disparate

factual and employment setting of the individual plaintiffs – the Court's Summary Judgment

Order found few relevant differences across Defendants' LPNS.[2] Further discovery could not

---

[2] On the basis of the undisputed facts, the Court's Summary Judgment Order stated that,

> Plaintiffs performed a largely mechanized function within Defendants' business.
> They were reliant on Defendants for placements and scheduling, and their skill
> set did not permit them to make decision about the care to be given clients. For
> their part, Defendants made certain that Plaintiffs provided the care prescribed
> by a physician in accordance with the procedures approved by HHAs. Plaintiffs
> did not make any significant investment in equipment or materials, and they had
> no opportunity for profit or loss in the course of their work for Defendants.

-11-

undermine this finding, because Defendants have conceded the relevant facts.

The second factor – the prevalence of individual defenses – has also been effectively mooted. Defendants have already argued the applicability of FLSA exemptions to certain LPNs, including the professional exemption, 29 U.S.C. § 213(a)(15), the companionship exemption, id., and the exemption for employees subject to the Motor Carrier Act, 49 U.S.C. § 31501 et seq., § 213(b)(1). The Court found these exemptions inapplicable to any of Defendants' LPNs in its Order Approving Supervised Notice. (Doc. No. 196 at 5-6). Moreover, upon review of the FLSA exemptions listed in § 213, it is apparent that Defendants' LPNs do not fit within any statutory exemption. The only individual defenses available to Defendants are thus claims that particular Opt-Ins were (1) never in Defendants' employ, (2) were not employed as LPNs, or (3) never worked in excess of 40 hours per week.[3] But the information necessary to determine the availability of these claims is already in Defendants' possession. As a result, the period between the opt-in deadline on December 12, 2008 and the filing deadline for Defendants' Motion to Decertify on January 16, 2009 was sufficient to allow Defendants to litigate these claims with respect to all Opt-Ins.

Defendants also claim that discovery is likely to show that certain LPNs represented to

---

Defendants maintained a high degree of control over Plaintiffs, monitoring their work for purposes of State regulations, the wishes of contractual partners, and for their own business goodwill. Finally, Plaintiffs performed the most essential functionn within Defendants' enterprise: private duty nursing. As a result, the Court concludes that there is no genuine issue of material fact as to whether Plaintiffs were employees or independent contractors. Plaintiffs were employees entitled to the overtime protections of the FLSA.

(Doc. No. 189 at 32-33).

[3] Also available to Defendants is the claim that certain individual LPNs filed for bankruptcy without listing their claims against Defendants among their assets. These claims are discussed below, but for present purposes, it is sufficient to note that Defendants' have been able to litigate these claims without additional discovery.

-12-

the Internal Revenue Service that they were self-employed. Without addressing the likelihood of uncovering such evidence, the Court concludes that such evidence would not be fruitful to the Court's resolution of a Motion to Decertify. This is for the reason that the "economic realities test" examines the realities of a working relationship, not the perceptions or intentions of a worker. See generally Imars, 1998 WL 598778 at (reversing summary judgment finding of "independent contractor" status where worker preferred to be treated as, filed taxes as, and signed contract as independent contractor). For these reasons, additional discovery is unwarranted under the second factor.

The third factor requires analysis of "fairness and procedural considerations." Pep Boys, 2006 WL 2821700, at *3 (M.D. Tenn. Sept. 26, 2006). The Court recognizes that an argument could be made against collective action on the basis of the unorthodox procedural history of this case. The Court considers that argument below, in response to Defendants' Motion to Decertify. For purposes of Defendants' Discovery Motion, the relevant question is whether Defendants require discovery to perfect this argument. Here, the answer is no. The basis of the argument that the procedural history of this case prejudiced Defendants is that the Court's Summary Judgment Order preceded its Order Approving Supervised Notice. The root of Defendants' prospective argument – the sequencing of the Court's Orders – is thus already plain.

Finally, the Court also notes that further discovery is unnecessary to the twin purposes of FLSA collective action under § 216 as defined by Hoffman-LaRoche, Incorporated v. Sperling, 493 U.S. 165, 170 (1989). The first purpose – reducing plaintiffs expenditures and facilitating plaintiff claims through consolidation of resources - would not be served by additional discovery. In addition, further discovery would be antithetical to the second purpose of § 216(b), the

-13-

efficient resolution of common claims. This is because reopening discovery would mean significant delay and cost to both parties.

For these reasons, the Court concludes that re-opening discovery is not warranted. Additional discovery as to the Opt-Ins would assist neither Defendants in perfecting their Motion to Decertify, nor the Court in adjudicating such a Motion. Because the Court concludes that the second premise underlying Defendants' Discovery Motion is flawed, the Court does not address the third premise of Defendants' argument, that Defendants are entitled to perfect their Motion to Decertify. Accordingly, Defendants Discovery Motion is hereby **DENIED**, and the Court will consider Defendants' Motion to Decertify as filed.

2.    Defendants' Motion to Decertify

Defendants argue that collective action is improper in this case under the three (3) factors enumerated above:

> (1) the disparate factual and employment setting of the individual plaintiffs, such as a) job duties; b) geographic location; c) supervision; and d) salary; (2) the various defenses available to the defendant that appear to be individual to each plaintiff; and (3) fairness and procedural considerations.

Wilks v. Pep Boys, 2006 WL 2821700, at *3. The Court considers Defendants' arguments under each factor in turn.

A.    *Disparate Factual and Employment Settings of Individual Plaintiffs*

Defendants claim that factual disparities predominate across the Plaintiff class, specifically citing disparities in (1) geographic location, (2) pay, (3) type of patient care, (4) investment in the business, (5) other employment outside of Defendants, (6) scheduling and

-14-

amount of work, and (7) damages. (Doc. No. 498 at 5-10). The Court finds this argument unpersuasive.

As a preliminary matter, only Defendants' alleged "investment in the business" disparity presents new information to the Court: that certain LPNs claimed upwards of $40,000 on their taxes for work-related expenses. While this disparity is at odds with Defendants acknowledgment in their Response to Plaintiff's Statement of Facts that LPNs all invest minimally in the business – somewhere in the neighborhood of $45 (Doc. No. 189 at 8) – it is nonetheless illusory. As Plaintiffs have argued, the evidence suggests that the differences in claimed work expenses reflect the fact that some LPNs claim a vehicle among work-related expenses on their tax returns. Standing alone, this fact signifies only that the work of an LPN requires travel for which Defendants do not reimburse. This is not the sort of expense that qualifies as investment in the business under <u>Donovan v. Brandel</u>, 736 F.2d 1114, 1118-19 (6th Cir. 1984).

With regard to the other factual disparities alleged by Defendants, Defendants have asserted no new facts, and the Court was in possession of all the relevant information at the time of summary judgment and nonetheless found that collective decision on the merits was proper. This was for the reason that the disparities now highlighted by Defendants are irrelevant to the "economic realities" test. That individual Opt-Ins may have worked in different regions, for slightly different pay, providing different care over different periods, and sometimes working for different employers simultaneously, are facts that were rightly assigned little weight in the Court's Summary Judgment Order. (Doc. No. 189 at 18-33). As a result, the Court will not decertify the Plaintiff class on the basis of disparities so dissociated from the merits of this case.

-15-

## B.   Individual Defenses

Defendants argue that the following Opt-In Plaintiffs are not properly parties to this suit because they were not employed by Defendants as LPNs:

> Lekisha Ford, Stephanie Ford, Tanya Spangler, Tracey Boyce, Carolyn Coleman, Brittany Hammond, Anne Barnum King, Charlotte Folk, Daisy Taylor, Sandra Ford, Joanna Tipton, Angela Reyes, Barbara Johnsen, Betty Greenwood, Bobby G. Lewis, Sandra L. Bryant, Amanda Strong, Brandy Ferrell Brown, Earnestine Grant-Seay, Nancy Leland, Linda Mason, Jodi Mullins, Kim Pendergrass Jones, Jerri Sanders Dyne, Erin Sherrill, Darlene Stockton, Russell Young, and Catherine Mary Zaiger.

(Doc. No. 498 at 10-11). Plaintiffs are in agreement that these individuals are not proper parties to the present dispute and should be voluntarily dismissed. (Doc. No. 501 at 8). The Court finds that dismissal of these Opt-Ins is the proper course of action under the circumstances, not decertification. Accordingly, the above-listed Opt-Ins are **DISMISSED** from this case.

Defendants also contest collective action on the grounds that certain Opt-Ins filed for bankruptcy without listing their claim against Defendants among their assets in bankruptcy court. According to Defendants, these Plaintiffs must be judicially estopped from asserting their claims here. The Court finds that this claim is more properly considered as part of Defendants' Motion to Disqualify. If any Opt-Ins should be judicially estopped, the proper course of conduct is for the Court to dismiss such Opt-Ins. Those not properly party to the suit may be removed without dismantling an otherwise proper Plaintiff class. For this reason, the Court leaves the matter of LPNs who filed for bankruptcy until discussion of Defendants' Motion to Disqualify, below.

## C.   Fairness and Procedural Considerations

The procedural history of this case has been unorthodox. Defendants may reasonably

-16-

have expected the Court to conditionally certify the Plaintiff class prior to ruling on summary judgment – Defendants would then have had the opportunity to conduct discovery as to the Opt-Ins and contest the propriety of a representative action before proceeding to argue the merits on summary judgment.

However, Defendants' conduct in litigating this case does not support an argument that the procedural history here has resulted in unfairness to Defendants. As noted above, Defendants conceded sufficient facts on summary judgment to both (1) support a finding of substantial similarity, and (2) permit a merits-based decision on the basis of representative proof. Defendants litigation strategy was not to highlight differences across its LPNs, but rather to argue that LPN similarities support classification of all LPNs as "independent contractors." Defendants pursued this line of argument in their Response to Plaintiff's Motion for Expedited Court-Supervised Notice (Doc. No. 31 at 5-9), Memorandum in Support of Motion for Summary Judgment (Doc. No. 137), and even still in their Memorandum in Support of Defendants' Motion to Decertify (Doc. No. X at 4)[4] and their Reply to Plaintiffs' Response to Defendants' Motion to Disqualify (Doc. No. 517 at 2).[5]

---

[4] Defendants argue:

> It is certainly true that those LPNs who contracted with Guardian Angel Nursing Inc. or On-Call Staffing, Inc. to provide private duty nursing shared some things in common. For example, all LPNs agreed and acknowledged their independent contractor status whereby they agreed to exercise their own professional judgment in performing their work as an LPN and not as an employee. Likewise, all LPNs recognized that the Defendants unequivocally surrendered any and all right to direct, supervise, or control the methods, manner or nature of the LPNs' nursing services.

(Doc. No. 498 at 4).

[5] With regard to Plaintiffs' argument that certain Opt-Ins failed to disclose their claims against Defendants as assets in bankruptcy court because these Opt-Ins were unaware of their FLSA claims, Defendants contend:

-17-

Furthermore, Defendants took no discovery of the approximately 30 LPNs who had opted-in before discovery closed. Under the FLSA, an opt-in becomes a party plaintiff upon filing a signed, written consent with the Court – it was not necessary for the Court to approve supervised notice for the case to proceed as a collective action and for the Opt-Ins to become Plaintiffs. Morgan, 551 F.3d at 1258. That Defendants nonetheless took no discovery with respect to the Opt-Ins at the time discovery closed suggests that Defendants were pursuing an alternative litigation strategy. The unusual procedural posture of this case thus did prejudice Defendants.

### D. The Purposes of Collective Action Under Section 216(b)

The Court also notes that the twin purposes of § 216(b) also support permitting this case to proceed as a collective action: the Plaintiffs have already received a favorable summary judgment decision, collective determination of remaining issues in the case will not be unduly cumbersome, and a class action will promote efficiency and reduce the burden that would befall Plaintiffs if forced to litigate remaining issues individually.

For these reasons, and because the Court finds no reason to decertify the class under the three (3) motion to decertify factors discussed above, Defendants' Motion to Decertify is **DENIED**.

### 3. Defendants' Motion to Disqualify

_____

Plaintiff[s'] . . . [are] essentially arguing that they did not know because they agreed in writing to be and act like independent contractors, not employees, and Defendants treated them as independent contractors. It is Defendants contention in this lawsuit that each and every one of the opt-ins who contracted to do private duty LPN work carried out those duties as independent contractors and not as employees.

(Doc. No. 517 at 2).

-18-

Defendants move this Court to disqualify 40 Opt-In Plaintiffs from this action. These Plaintiffs failed to list their FLSA claims against Defendants among their assets in bankruptcy court, and so, according to Defendants, should be judicially estopped from asserting those claims here. (Doc. No. 500). Plaintiffs respond that the group of 40 Opt-Ins may be broken into five (5) sub-groups:

> (1)    Opt-Ins who were not employees of Defendants until after their bankruptcy cases concluded;
>
> (2)    Opt-Ins who were employed by Defendants prior to conclusion of their bankruptcy cases, but who had no knowledge or reason to know of their claims against Defendants;
>
> (3)    Opt-Ins who derived no benefit from filing for bankruptcy because their bankruptcy proceedings were terminated or dismissed;
>
> (4)    Opt-Ins who knew or had reason to know of their claims against Defendants at the time of their bankruptcy proceedings, but whose bankruptcy proceedings are still pending;
>
> (5)    Opt-Ins who knew or had reason to know of their claims against Defendants at the time of their bankruptcy proceedings, and whose proceedings are now concluded.

See generally, (Doc. No. 503). Plaintiffs argue that judicial estoppel is improper as to Groups (1) through (3), and that the Court should stay opinion as to Groups (4) and (5) until such time as Plaintiffs have had the opportunity to correct the failure of these Opt-Ins to honestly disclose their assets during their respective bankruptcy proceedings. (Id.).

Judicial estoppel holds that "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his

-19-

interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." <u>New Hampshire v. Maine</u>, 532 U.S. 742, 749 (2001) (quoting <u>Davis v. Wakele</u>, 156 U.S. 680, 689 (1895)). The doctrine permits a court to bar a litigant's claim where necessary to protect the integrity of the judicial system against the threat of gamesmanship. <u>Id.</u>

While there is no exact formula for determining when to apply judicial estoppel, three (3) factors are generally considered necessary conditions to its application: (1) the party to be estopped must have taken clearly inconsistent positions in different court proceedings; (2) the party to be estopped must have succeeded in persuading the first court such that there is a present risk of inconsistent decisions; and (3) the party to be estopped must be capable of gaining an unfair advantage if not estopped. <u>Id.</u> at 750-51.

The Sixth Circuit has held that judicial estoppel may be appropriate in circumstances such as those present here, where litigants failed to disclose a lawsuit among their assets in prior bankruptcy proceedings. <u>Browning v. Levy</u>, 283 F.3d 761, 775 (6th Cir. 2002). However, under the law of this Circuit, the litigants must have intentionally withheld information during bankruptcy proceedings – mere mistake or inadvertence does not warrant the remedy of judicial estoppel. <u>Id.</u> Following the Fifth Circuit's decision in <u>In re Coastal Plains, Incorporated</u>, 179 F.3d 197, 210 (5th Cir. 1999), the Sixth Circuit holds that inadvertence is established by evidence that either (1) the litigant had no knowledge of the factual basis of his claim at the time of disclosure in the bankruptcy proceeding, or (2) the litigant had no motive for concealment. <u>Eubanks v. CBSK Financial Group, Inc.</u>, 385 F.3d 894, 897 (6th Cir. 2004); <u>Browning</u>, 283 F.3d at 776.

-20-

Plaintiffs' five (5) sub-groups provide a good framework in which to analyze whether judicial estoppel is proper in this case. With regard to Group (1) – Opt-Ins who became employees of Defendants after completion of their bankruptcy proceedings – it is immediately apparent, and Defendants do not dispute, that judicial estoppel is improper. As to these Opt-Ins, there is no prior inconsistent position.

As to Group (2) – Opt-Ins who were employed by Defendants prior to conclusion of their bankruptcy cases, but who had no knowledge or reason to know of their claims against Defendants – judicial estoppel is likewise improper. The failure to disclose in these cases satisfies the In re Coastal Plains test for inadvertence, because Group (2) Opt-Ins had no knowledge and no reason to know of their FLSA claims against Defendants. Defendants argue to the contrary that anyone working in excess of 40 hours per week while not receiving additional compensation should reasonably know they have an FLSA claim. (Doc. No. 518 at 2). However, the Court finds this argument unconvincing, particularly where, as here, the workers were required to sign documentation in the course of their employment stating that they were independent contractors with no entitlement to overtime compensation.

Group (3) Opt-Ins – Opt-Ins whose bankruptcy proceedings were terminated or dismissed – will not be judicially estopped from proceeding in this case because they did not succeed in persuading a prior court of a position inconsistent with the one being asserted here.

With regard to Group (4) – Opt-Ins who knew or had reason to know of their claims against Defendants at the time of their bankruptcy proceedings, but whose bankruptcy proceedings are still pending – Plaintiffs have requested the opportunity to amend the positions of these Opt-Ins in their ongoing bankruptcy proceedings. Plaintiffs argue that, if full disclosure

-21-

can be achieved in the bankruptcy proceedings, there is no risk of inconsistent judgments, and so judicial estoppel would be unwarranted. The Court considers this request to be reasonable and in accordance with Sixth Circuit precedent. See Eubanks, 385 F.3d at 897 (judicial estoppel improper where litigant corrected prior incomplete disclosure to bankruptcy court before completion of bankruptcy proceedings). Accordingly, the Court **STAYS** judgment on Defendants' Motion to Disqualify as to Group (4). Plaintiffs are to report back to the Court within **20 days** of issuance of this Order regarding Plaintiffs' ability to correct incomplete disclosures in Group (4) bankruptcy proceedings.

Group (5) represents Opt-Ins who knew or had reason to know of their claims against Defendants at the time of their bankruptcy proceedings, and whose proceedings are now concluded. Judicial estoppel as to this Group is proper. These Opt-Ins made knowing omissions in their bankruptcy proceedings, succeeded in misleading bankruptcy courts, and would derive an unfair advantage from being able to proceed in this litigation. Plaintiffs argue that judgment should be stayed as to Group (5) as well as Group (4), so that Plaintiffs may attempt to re-open the bankruptcy cases of Group (5) and make the appropriate disclosures. The Court is aware of no precedent to support this request, and Plaintiffs provide none. As it stands, the prior bankruptcy decisions of these Opt-Ins are final and there is a risk of inconsistent judgments. Defendants Motion to Disqualify is therefore **GRANTED in part** with respect to Group (5).

For the reasons stated above, Defendants Motion to Disqualify is **DENIED in part** with Respect to Groups (1), (2), and (3), **STAYED** with respect to Group (4), and **GRANTED in part** with respect to Group (5). Group (5) Opt-Ins are hereby disqualified from this action.

-22-

## IV.    CONCLUSION

To summarize the findings of this Order, the Court **GRANTS** Defendants' Motion to Ascertain Status, **DENIES** both Defendants' Discovery Motion and Defendants' Motion to Decertify.  However, the Court **DISMISSES** those Opt-Ins identified in Defendants' Motion to Decertify who never worked for Defendants as LPNs.  Defendants' Motion to Disqualify is **GRANTED in part, DENIED in part, and STAYED in part**: the Court **DISQUALIFIES** from this action those Opt-Ins in Group (5), defined above, **STAYS** judgment with respect to Group (4), defined above, and **DENIES** Defendants' Motion with respect to Groups (1), (2), and (3), defined above.  Plaintiffs have **20 days** from issuance of this Order to report to the Court regarding correction of omissions in the bankruptcy proceedings of Group (4).  The Court will schedule this case for pretrial conference and trial upon resolution of Defendants' Motion to Disqualify with respect to Group (4).

It is so ORDERED.

Entered this ____ day of ___March___, 2009.




_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT